[Civ. No. 1422. Third Appellate District.—November 29, 1915.]

## C. K. RAGAN, Appellant, v. CHASE S. RAGAN, Respondent.

DEED—DELIVERY TO THIRD PARTY—VESTING OF TITLE—ESSENTIALS.—
It is absolutely essential to the validity and effectiveness of a deed in escrow that it be delivered to a third person for the grantee beyond any power in the grantor to recall or revoke it.

ID.—QUIETING TITLE—DELIVERY OF DEED—FINDING SUPPORTED BY EVI-
DENCE.—In this action to quiet title, wherein the real question at issue was whether or not the deed under which the defendant claimed title was ever in fact delivered by plaintiff's intestate, it is held that the evidence is sufficient to support the finding that the grantor, about three weeks before his death, delivered the deed to the grantee with the intention that the title should vest absolutely in the latter, regardless of whatever doubt may be entertained as to the sufficiency of the first manual tradition of the deed to constitute a legal delivery.

ID.—COMMUNITY PROPERTY—CONVEYANCE BY HUSBAND—VALUABLE CON-
SIDERATION—CONSENT OF WIFE NOT NECESSARY.—The husband has
the right to make a conveyance of the community property without
the consent of his wife, where it is made upon a valuable and ade-
quate consideration.

APPEAL from a judgment of the Superior Court of Kings
County, and order denying a new trial. W. B. Wallace,
Judge presiding.

The facts are stated in the opinion of the court.

H. Scott Jacobs, for Appellant.

John G. Covert, for Respondent.

BURNETT, J.—Plaintiff is the son and defendant a brother
of one C. K. Ragan. Shortly after the birth of plaintiff his
mother obtained a divorce from his father and the latter
remarried in the year 1877. The father had no children by
his second marriage, and he died intestate, on May 27, 1910,
in the county of Kings, this state, leaving as his only heirs
his widow, Mary E. Ragan, and plaintiff.

The complaint alleges that C. K. Ragan and his wife, after
the year 1891, and prior to the 21st of November, 1906, ac-
quired certain community property, including the land in
controversy in this action, consisting of eighty acres of the
value of eight thousand dollars; that, on the twenty-first day
of November, 1906, C. K. Ragan signed an instrument pur-
porting to be a deed conveying to the defendant said eighty
acres of land. It is alleged, on information and belief, that
said deed was never delivered; that there was no considera-
tion for it, that it was in the nature of a gift, and was signed
without the consent of the wife of said C. K. Ragan and with
the intention on his part to defraud his wife and his son of
their rights in the property. The complaint further alleged
that plaintiff has been the owner of an undivided one-half
interest in this real property since said twenty-seventh day
of May, 1910. The prayer was for a decree quieting plain-
tiff's said title and canceling said pretended deed. The an-
swer put in issue the material allegations of the complaint,
and the findings and judgment were in favor of defendant.

In his reply brief appellant declares: "It will be noticed
from an inspection of these specifications (in the bill of

exceptions) that the real question at issue was whether or not the deed under which defendant claims title was ever in fact delivered by plaintiff's intestate, C. K. Ragan. Plaintiff also specifies certain errors of law occurring at the trial and excepted to by him, consisting largely of rulings of the court in the admission of testimony.''

As to the sufficiency of the evidence to support the finding of delivery, we can perceive no possible doubt. The law is, of course, as quoted by appellant from *Hayden* v. *Collins,* 1 Cal. App. 263, [81 Pac. 1120] : ''But it is absolutely essential to the validity and effectiveness of a deed in escrow, that it be delivered to a third person for the grantee beyond any power in the grantor to recall or revoke it. The grantor must clearly and unequivocally evidence an intent and purpose to part with the possession and control of the deed for all time. In short, the delivery and transfer must be irrevocable.'' The question of escrow, however, need not be considered, as there is a sufficient showing to support the finding that ''said deed was thereafter, to wit, on or about the 25th or 26th of April, 1910, duly and regularly delivered by said C. K. Ragan to said defendant Chase S. Ragan at the home of said Chase S. Ragan.''

Witness Charles Tomer testified: ''I visited C. K. Ragan frequently during his illness and talked with him about various matters. I remember a conversation with him about two weeks before his death; I remember the substance of what was said at that time about a deed to Chase S. Ragan of that land. Mrs. Chase Ragan was present. I can state the substance of the conversation. He said he had sold Chase Ragan that place; and he had paid for it and he had given him a deed.''

Defendant testified: ''I bought the ranch and was to pay for it yearly. The agreement was oral. C. K. Ragan said that I could have this piece of land if I would pay him at the rate of eight per cent interest a year as long as he lived, providing he didn't live over ten years, if I would pay him three hundred and twenty dollars a year, and I spoke about not having the money then, and he said he would let me have five hundred dollars the same as he did the ranch if I would pay him eight per cent on it, so I bought in under those conditions. . . . I told him I would take the ranch under those conditions and I took possession of the ranch; I don't know

just exactly the day of the month but it was in 1906; I came here to town and of course we talked it over and we had made the bargain for the ranch. . . . He handed me this deed; he says, 'Here, Chase, is the deed to your piece of land out there,' and he says, 'You take it and look at it and see that it is all right,' so I says, 'I don't know whether it is right or not,' and if my memory serves me right I took the deed over to Frank Hight and I think that Frank Hight found some little mistake in the deed and corrected it, and I took it back and gave it to C. K. Ragan and asked him what he was going to do with it; he said he was going to put it in escrow; I didn't pay any attention to it; . . . I took him out to my house and looked after him; . . . he said if he died before the payments were made I was to have my deed and the place was paid for." The witness further stated that he took possession of the land in pursuance of his agreement with C. K. Ragan, and, furthermore, that he put improvements upon the land of the value of two thousand five hundred dollars, and that, two or three weeks before his brother died, "my wife and me was sitting by his cot; he was quite sick and he had that little tin box and was looking over his papers, and we sat there and he come to that deed and he handed it to me and he says: 'Chase, here is the deed to your place and I told Judge Ferguson to take this deed in and have it recorded with the rest of them,' . . . and I saw him a day or two later and paid him for recording the deed." There is other corroborative testimony, but from the foregoing it is certainly a rational conclusion that, about three weeks before he died, the grantor delivered to said grantee the deed with the intention that the title should vest absolutely in the latter, whatever doubt may be entertained as to the sufficiency of the first manual tradition of the deed to constitute a legal delivery.

Of the contention that decedent had executed a prior deed of the same premises to Ida M. Ragan, the wife of defendant, and therefore had no title to convey to respondent, it is sufficient to say that there is sufficient evidence to support the theory that said deed was never delivered, and, if delivered, that it was subsequent to the delivery of said deed to respondent. It is hardly necessary to add that we must be controlled by the evidence favorable to respondent's contention rather than that which seems to support appellant's view. Extended consideration is devoted in the briefs to the ques-

tion of the credibility of the evidence in support of the findings, but it is not of moment here since we discern no inherent improbability therein.

· The second point made by appellant is that the deed to respondent was and is void because in contravention of that portion of section 172 of the Civil Code providing that the husband ''cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent thereto.'' There would seem to be force in the contention of respondent that this provision was enacted for the sole benefit of the wife, and that no other person could or would have a right to complain of its violation, and that since she was not a party to the action or directly or indirectly interested therein, the objection cannot be considered. However, the soundness of this view need not be asserted, as there is an answer to appellant's contention that cannot be gainsaid. The court found on sufficient evidence that the husband conveyed the property not only for a *valuable* but for an *adequate* consideration. This unquestionably he had a right to do, under said section 172, without the consent of his wife. The evidence in support of this finding is set forth in the brief of respondent and need not be repeated here. The court being of the opinion—and that opinion being legally supported—that the husband had conveyed the property for a valuable consideration, it was, of course, not erroneous to sustain an objection to the offer to show that the wife's consent to the transfer was not obtained. This consideration, as well as the question whether said land was community property, was rendered immaterial by the finding and evidence already mentioned as to the sale for a valuable consideration.

An objection as calling for the conclusion of the witness was made by appellant to this question asked of defendant: ''Well, what is your estimate of the amount of money you paid, Mr. Ragan?'' The context, however, shows that counsel was calling for the best recollection of the witness and the question was so understood. He had stated that he had no memorandum of the amount he had paid and he could not state it exactly, but he had it in his mind. The evidence was somewhat uncertain, but we think it was admissible for what it was worth.

We can see no error in sustaining an objection to the following question asked of Mrs. Ragan: "And you thought it would be better to record the Chase S. Ragan deed?" What she thought in reference to it was of no consequence, and, besides, it was quite apparent from her conduct that she did think it was "better" to record that deed. It may be said, also, that she substantially answered the question subsequently.

Two other alleged errors in ruling upon the admissibility of evidence are suggested, but they seem so inconsequential as not to merit specific attention. Indeed, in view of the theory of the case adopted by the trial court, it could not be held that any or all of the rulings upon the admission of evidence, if technically erroneous, resulted in any prejudice.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.